IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00642-PAB-NYW

UNITED STATES OF AMERICA *ex rel.* TERRY LEE FOWLER and LYSSA TOWL,

    Plaintiff,

v.

EVERCARE HOSPICE, INC., n/k/a Optum Palliative and Hospice Care, a Delaware corporation,
OVATIONS, INC., a Delaware corporation,
OPTUMHEALTH HOLDINGS, LLC, a Delaware limited liability corporation, and
UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation,

    Defendants.

---

**ORDER**

---

This matter is before the Court on Relators Fowler's and Towl's Motion to Determine Relators' Share of Settlement Proceeds [Docket No. 175]. The United States opposes relators' motion in part. Docket No. 185. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**

    **A.  Procedural History**

This action arises under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. Relators Fowler and Towl (the "relators") initiated a qui tam action on March 15, 2011 alleging that defendants knowingly submitted, or caused to be submitted, claims for Medicare hospice expenses for patients who were ineligible for such benefits. *See* Docket No. 1. The complaint was filed about one month before Mr. Fowler resigned

and two months after Ms. Towl was terminated from Evercare Hospice, Inc. ("Evercare"). Docket No. 176 at 12, ¶ 23; Docket No. 176-4 at 15, ¶ 31.

On June 5, 2013, Sharlene Rice, another former Evercare employee, filed her own qui tam action in the United States District Court for the Northern District of Illinois. *See* Docket No. 154-2. That case was transferred to the United States District Court for the District of Colorado, *see United States ex rel. Rice v. Evercare Hospice, Inc.*, Civil Action No. 14-cv-01647-PAB, and consolidated with this action on June 24, 2014. Docket No. 28. The United States intervened in the consolidated action on August 25, 2014, Docket No. 34, and filed a consolidated complaint on November 10, 2014. Docket No. 46. On September 21, 2015, the Court denied Evercare's motion to dismiss the government's complaint and granted in part and denied in part Evercare's motion to dismiss the relators' second amended complaint. Docket No. 120.

On July 13, 2016, Evercare agreed to pay $18 million to resolve the claims in the consolidated action. Docket No. 183. On September 12, 2016, Mr. Fowler and Ms. Towl filed a motion pursuant to 31 U.S.C. § 3730(d)(1) requesting that the Court order the United States to pay 23 percent of the $18 million settlement to the relators. Docket No. 175.[1]

### B. Facts

The relators filed their complaint under seal on March 15, 2011. Docket No. 1. Before filing the complaint, Mr. Fowler and Ms. Towl provided disclosures to the

---

[1] On September 15, 2016, the Court dismissed Ms. Rice's complaint pursuant to 31 U.S.C. § 3730(b)(5), leaving Fowler and Towl as the only remaining relators in this proceeding. Docket No. 178 at 13. As a result of her dismissal, Ms. Rice is not eligible to receive a share of the proceeds in this matter.

government. Docket No. 176-4 at 6, ¶ 13; Docket No. 176 at 6, ¶ 12. Mr. Fowler's pre-filing disclosure described an independent review of 129 denied Medicare claims, a copy of documentation regarding hospice-related denials that were not appealed by Evercare, examples of patients for whom bills were submitted despite Medicare denials, and a description of Evercare's policies that were designed to maintain ineligible patients on their rolls. Docket No. 176-4 at 6-8, ¶14. Ms. Towl's pre-filing disclosure included descriptions of internal policies related to the underlying fraud and a roster of 146 Denver patients relating their hospice certifications to their diagnosis and whether they had seen a physician. Docket No. 176 at 6-8, ¶ 13.

Mr. Fowler and Ms. Towl provided supplemental documentation to the government related to Evercare's fraud after the government intervened. *See, e.g.,* Docket No. 176-4 at 8, ¶ 15 (discussing the delivery of 11 documents to the government). They also provided the government with draft search terms, *id.* at 11, ¶ 19, witness lists, *id.* at 11, ¶ 20, and a collection of Evercare emails. *Id.* at 11, ¶ 21.

The complaint in this action was filed one month before Mr. Fowler resigned from his position and two months after Ms. Towl was terminated by Evercare. Mr. Fowler states that he was induced into leaving Evercare by his supervisors, who provided contradictory instructions and repeatedly reprimanded him before placing him on a corrective action plan. *Id.* at 14-15, ¶¶ 29-30. Mr. Fowler resigned from Evercare in April 2011. *Id.* at 15, ¶ 31. Subsequently, Mr. Fowler obtained employment at a 20 percent reduced salary, which he maintained for a year and a half before being laid off. *Id*. at 15, ¶ 32. After an additional period of unemployment, Mr. Fowler was employed

at a further salary reduction through August 2015, when he retired. *Id.* at 15, ¶ 33. Evercare terminated Ms. Towl in January 2011. Docket No. 176 at 12, ¶ 23. She started her own business, which she now considers to be a success. *Id.* at 12-13, ¶ 25. The complaint in this action was filed under seal and was not provided to defendants until June 2012. *See* Docket No. 11 and subsequent order.

## II. LEGAL STANDARD

The False Claims Act allows a private citizen, "the relator," to file a qui tam lawsuit on behalf of the United States to recover the government's damages. 31 U.S.C. § 3730. If the government elects to intervene in a qui tam suit, as the government did here, a relator is entitled to 15 percent to 25 percent of the "proceeds of the action or settlement of the claim."[2] 31 U.S.C. § 3730(d)(1). The amount of compensation is determined by the "extent to which the person substantially contributed to the prosecution of the action." *Id.* "[D]etermination of the relator's share is left largely to the Court's informed discretion." *United States ex rel. Alderson v. Quorum Health Grp., Inc.*, 171 F. Supp. 2d 1323, 1331 (M.D. Fla. 2001). While the statute is silent about the factors that determine whether a contribution is substantial, courts may consider legislative history, internal Department of Justice ("DOJ") guidelines in FCA matters, and case law in determining the correct percentage to award to relators. *Alderson*, 171 F. Supp. 2d at 1331.

---

[2] There is a statutory exception where a relator might receive less if (1) the relator "planned and initiated" the violation of the FCA; (2) the relator "is convicted of criminal conduct arising from his or her role in the violation"; or (3) the relator's claim is based on disclosures "other than information provided by the person bringing the action." 31 U.S.C. § 3730(d). None of these exceptions applies here.

The legislative history of the FCA provides three factors that courts often consider in determining the amount relators should recover: the significance of the information provided by the relator, the relator's contribution to the final outcome, and whether the government was previously aware of the fraud.  *Alderson*, 171 F. Supp. 2d at 1332 (*citing* S. Rep. No. 99-345, at 28 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5293).

Some courts have also considered the DOJ guidelines for determining the relators' share.  The DOJ guidelines identify the following factors to consider in increasing the relator's percentage of the settlement:

> 1. The relator reported the fraud promptly.
> 2. When he learned of the fraud, the relator tried to stop the fraud or reported it to a supervisor or the Government.
> 3. The qui tam filing, or the ensuing investigation, caused the offender to halt the fraudulent practices.
> 4. The complaint warned the Government of a significant safety issue.
> 5. The complaint exposed a nationwide practice.
> 6. The relator provided extensive, first-hand details of the fraud to the Government.
> 7. The Government had no knowledge of the fraud.
> 8. The relator provided substantial assistance during the investigation and/or pretrial phase of the case.
> 9. At his deposition and/or trial, the relator was an excellent, credible witness.
> 10. The relator's counsel provided substantial assistance to the Government.
> 11. The relator and his counsel supported and cooperated with the Government during the entire proceeding.
> 12. The case went to trial.
> 13. The FCA recovery was relatively small.
> 14. The filing of the complaint had a substantial adverse impact on the relator.

*Johnson*, 889 F. Supp. 2d at 796 n.6 (listing factors). The DOJ guidelines are not binding on courts, *Johnson*, 889 F. Supp. 2d at 794, but both sides cite them here as a means of determining an award.

The minimum percentage awarded to a relator, 15 percent, "is viewed as a finder's fee to which a relator is entitled even when he or she does not substantially contribute to the prosecution of the action." *Roberts v. Accenture, LLP*, 707 F.3d 1011, 1016 (8th Cir. 2013) (*citing* S. Rep. 99-345, 1986 U.S.C.C.A.N. 5266, 5293). In contrast, the award "of the full 25 percent fee should be reserved for only those individuals whose conduct in disclosing the fraud is virtually flawless." *United States v. Gen. Elec.*, 808 F. Supp. 580, 584 (S.D. Ohio 1992).

## III. ANALYSIS

The government acknowledges that Mr. Fowler and Ms. Towl commenced this action soon after they were disciplined or terminated by Evercare, that the relators responded to government requests, and that the relators' actions may deter misuse of the Medicare hospice benefit, "a significant issue impacting the health and well-being of a particularly vulnerable patient population." Docket No. 185 at 7. The government, however, states that the relators "did not develop all the facts and supporting documentation necessary to make the case" and that relators did not suffer sufficient personal hardship to justify an increased award. *Id.* The government argues that an award of $3,240,000, 18 percent of the proceeds of this action, is sufficient to compensate the relators. *Id.* at 15.

The Court will first consider the Senate factors noted above, namely, the significance of the information provided by the relators, relators' contribution to the final outcome, and whether the government was previously aware of the fraud.

The relators provided detailed pre-filing information to the government regarding the method and manner of the fraudulent scheme. Such information included a description of the internal policies used to motivate physicians, nurses, and other staff to place ineligible patients in hospice. Docket No. 175 at 7-8. In addition, the relators provided a roster of 146 patients, documentation from a review of 129 denied Medicare claims, and documentation on denials for ineligible patients at four Evercare locations. *Id.* at 10. This information provided a roadmap to Evercare's large-scale fraud.

Although relators provided detailed information to the United States, the government is correct that the complaint filed by the government demonstrates significant additional fact-gathering. *See* Docket No. 46. In particular, the government points to the falsity and scienter allegations in its complaint as evidencing its extensive additional effort. Docket No. 185 at 9-11.

As to the falsity allegations, the government's complaint provided specific clinical information from patients' records demonstrating the falsity of Evercare's hospice submissions. Docket No. 46 at 36, 38, 50, ¶¶ 176, 186, 237. The specificity of these claims was made possible by a medical record review conducted by an expert retained by the government. Docket No. 185 at 10. The information provided to the government by relators also identified patient

7

information. Although relators provided sufficient patient information to demonstrate the scheme they alleged, Docket No. 120 at 29-30 (noting that, of 21 representative patients for whom defendants allegedly submitted false reimbursement claims, relators provided sufficient details for 14 patients showing claims denied on the basis of ineligibility),[3] and, although additional fact development by the government is not unusual, the substantial investigation by the United States undermines relators' request for a high-range reward.[4]

As to the scienter allegations, the government states that the relators' complaint did not contain allegations "rebutting Evercare's principal defense that it could not have knowingly submitted false claims because it reasonably relied on the clinical judgment of certifying physicians." Docket No. 185 at 11. The relators' complaint identifies many of the tactics implemented by Evercare to encourage physicians to improperly certify hospice patients. Docket No. 1 at 13-28, ¶¶ 53-129. However, the government supplemented these allegations with detailed information related to Evercare's knowledge of the fraud. *See* Docket No. 120 at 20-22 (noting that the government's complaint contains "extensive allegations that suggests that the information on which the physicians relied . . .

---

[3] While the Court's decision was based on the second amended complaint, filed after the government's complaint, the relevant portion of relator's underlying complaint was unchanged. *Compare* Docket No. 1 at 28-36, ¶¶ 130-53, *with* Docket No. 86 at 37-44, ¶¶ 190-213.

[4] Post-intervention, the government engaged in substantial written discovery and retained a medical expert to conduct a medical review of a statistically significant random sample of Evercare patients. Docket No. 185 at 11.

was not reliable and therefore precluded those physicians' legitimate exercise of clinical judgment").

After the government intervened, relators continued to contribute to the litigation by meeting with the government, formulating search terms, and preparing a list of witnesses and outlines of deposition testimony. Docket No. 175 at 12-14. The government does not dispute that relators continued to assist the government, but states that the type of assistance provided is "commonly provided by relators." Docket No. 185 at 13. The government is correct that, while relators in this action made themselves available to the government, their contribution was not as extensive as the contributions of relators in cases involving top-end awards. *See, e.g.*, *United States ex rel. Shea v. Verizon Communications, Inc.,* 844 F. Supp. 2d 78, 83 (D.C. Cir. 2012) (awarding 20 percent of the settlement where relator "participated fully in all aspects of the Government's investigation and settlement discussions," spending "hundreds of hours each year on the case"); *Alderson*, 171 F. Supp. 2d at 1340 (awarding 24 percent of the proceeds where relator and his counsel "participated fully in virtually every aspect of the case from beginning to conclusion").

The Senate factors also ask whether the government was aware of the fraud at the time the qui tam action was brought. The government does not dispute that, but for the relators' filing of this action, the government would have been unaware of the fraud perpetrated by Evercare. *See* Docket No. 175 at 14-15; Docket No. 185.

In addition to the Senate factors, one other factor commonly taken into consideration by courts is the hardship suffered by the relators.[5] *United States ex rel. Burr v. Blue Cross & Blue Shield of Florida, Inc.*, 882 F. Supp. 166, 169 (M.D. Fla. 1995) (a relator "may be entitled to the statutory maximum percentage in situations where the relator has suffered personal or professional hardship"). In this case, both Ms. Towl and Mr. Fowler were forced out or terminated by Evercare. Ms. Towl was terminated on January 5, 2011 and went on to form her own business, which consults with hospitals, medical practices, and physicians. Docket No. 176 at 12-13, ¶¶ 23, 25. She avers that, as a result of her termination, she "lost confidence" in herself and in potential employers. *Id.* at 12, ¶ 24. Mr. Fowler states that his supervisors at Evercare induced him to quit. Docket No. 176-4 at 14-15, ¶¶ 29-30. Mr. Fowler resigned in April 2011. Docket No. 176-4 at 15, ¶ 31. Mr. Fowler states that it took him several months to find a job, that his new job was at a 20 percent reduced salary, and that he was laid off after one and a half years at his new position. *Id.* at 15, ¶ 32. Several months after being laid off, he found another job, at a further reduced salary, from which he retired in 2015. *Id.* at 15, ¶ 33. Plaintiffs' hardship, while not insubstantial, is not as great as relators in several other cases. For instance, in *United States ex*

---

[5] One factor mentioned in the DOJ guidelines is whether "[t]he filing of the complaint had a substantial adverse impact on the relator." *Johnson*, 889 F. Supp. 2d at 796 n.6. Relator hardship arising from the filing of the qui tam action and hardship arising from the underlying fraud may be distinct, as is evident in this case. As noted above, the complaint was filed under seal and was only served on Evercare after both Mr. Fowler and Ms. Towl had resigned and been terminated, respectively. The filing of the complaint in this action does not seem to have adversely affected relators.

*rel. Johnson-Pochardt v. Rapid City Reg'l Hosp.*, 252 F. Supp. 2d 892 (D.S.D. 2003), the filing of the qui tam action "wreaked havoc" on the relator's life. *Id.* at 902; see also *Alderson*, 171 F. Supp. 2d at 1338 (noting the propriety of an increased award because "[e]ven a cursory review of applicable history demonstrates the formidable personal and legal difficulties encountered by [the relator]"). While Mr. Fowler and Ms. Towl both suffered hardship as a result of their actions, neither of them has demonstrated hardship justifying an award substantially above the government's proposal.

Weighing all of the above factors, the Court finds that an award of $3.6 million, 20 percent of the settlement in this case, is appropriate. While the relators provided the necessary information to commence the underlying lawsuit and brought the fraud to the attention of the government, the government nevertheless had to invest considerable resources to settle the case. An award in this amount takes into consideration the extent of the relators' contribution to the litigation and sufficiently compensates them for their hardship.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Relators Fowler's and Towl's Motion to Determine Relators' Share of Settlement Proceeds [Docket No. 175] is granted in part. It is further

**ORDERED** that $3.6 million, 20 percent of the settlement in this case, shall be awarded to relators pursuant to 31 U.S.C. § 3730. It is further

**ORDERED** that this case is closed.

DATED February 7, 2017.

                                        BY THE COURT:

                                        s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        United States District Judge